No. 41,649

W. F. PLETCHER, *Appellee*, v. L. C. ALBRECHT, *Appellant*.

(350 P. 2d 58)

Opinion filed March 5, 1960.

A. W. *Relihan,* of Smith Center, argued the cause, and *T. D. Relihan,* and *Terry E. Relihan,* both of Smith Center, were with him on the briefs for the appellant.

*Louis James,* of Osborne, argued the cause, and *W. McCaslin,* of Stockton, and *J. F. Bell,* of Smith Center, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, C. J.: This is an action to cancel a mortgage of record on land located in Smith county. Plaintiff recovered and the defendant appeals.

Inasmuch as the pleadings are not in controversy and there is little if any conflict in the evidence on which the trial court rendered its judgment, the facts necessary to a proper understanding of the appellate issues involved will be stated in the following manner.

On August 15, 1950, Ivan E. Bliss, then the owner of a quarter section of land located in Smith county, secured a real estate loan through F. L. Stevens, who was engaged in the insurance, loan and abstracting business in Smith Center. Bliss and his wife executed their interest coupon note, due ten years after date, together with a real estate mortgage, in the principal sum of $3,500.00. F. L. Stevens prepared the papers and made his wife, L. M. Stevens, payee in the note and mortgagee in the mortgage. At that time Mrs. Stevens did not know anything about the execution of the note and mortgage and had no money to loan. The mortgage was filed for record on August 15, 1950. On the next day L. M. Stevens transferred the note and mortgage to L. C. Albrecht, who had furnished the money for the loan, by endorsement and assignment, but Albrecht did not file his assignment of the mortgage for record until September 2, 1953.

In this connection it appears that on previous occasions Albrecht had advanced money to F. L. Stevens for several loans which had been made and consummated by F. L. Stevens to other borrowers under conditions and circumstances similar, if not identical, to those just related.

W. F. Pletcher purchased the mortgaged land on or about April 21, 1951, assuming and agreeing to pay the mortgage then of record in the name of L. M. Stevens.

The note required payment of $200.00 on the principal annually according to the tenor of ten annexed interest coupons. It also provided that the sum of $100.00 or any multiple thereof could

be paid on the principal by the mortgagor on any interest paying date. On August 15, 1951, the first annual interest payment date, Pletcher paid F. L. Stevens the sum of $2,648.75, which sum he intended to have applied on the interest and principal of the note and mortgage, receiving a receipt from the latter, signed by "F. L. Stevens," showing payment of that amount as "Interest $148.75— Principal $2500.00—SW ¼ 33-4-12." Before making this payment Pletcher had gone to the court house, inspected the records concerning the mortgage, and learned that it stood of record in the name of L. M. Stevens, but made the payment as above indicated notwithstanding.

F. L. Stevens remitted Albrecht the sum of $1,500.00 from the foregoing payment and also the sum of $148.75, which represented interest then due, and, without the knowledge of Albrecht as to the amount received or retained, kept for himself the sum of $1,000.00.

On June 3, 1952, some two months prior to the next interest payment date, Pletcher, after again inspecting the records in the office of the register of deeds and finding that the mortgage still stood of record in the name of L. M. Stevens, paid F. L. Stevens the sum of $1,042.50, which sum he intended to have applied on the balance of interest and principal, then due on the note and mortgage. At the time of making this payment he made no demand of F. L. Stevens for the surrender of the papers evidencing the indebtedness but did receive a receipt, whereby that individual acknowledged payment of that amount, as "Bal in full" on the land (describing it) in question.

F. L. Stevens remitted no part of the $1,042.50, paid by Pletcher to him, to Albrecht and the latter had no knowledge of such payment having been made until a much later date.

Albrecht had the note and mortgage in his possession at all times after August 16, 1950, and no demand was ever made on him for surrender of the note or any of the interest coupon notes until long after the defalcation of F. L. Stevens was discovered. On the other hand it is to be noted Albrecht accepted remittances made by F. L. Stevens for payments made by Pletcher on the note and mortgage without any objection and, during the trial, admitted he had given F. L. Stevens authority to collect interest on any of the loans made by Stevens with money he had advanced to him for that purpose.

Pletcher had no knowledge of the fact that the note and mortgage were owned by Albrecht at the time he made the payments to F. L.

Stevens, but he did know that the record holder appeared to be L. M. Stevens.

Following the payment last above mentioned, and on August 15, 1952, when the next interest payment fell due, F. L. Stevens remitted to Albrecht an interest payment of $85.00, which represented interest on the unpaid principal of the note in the amount of $2,000.00. No interest payment was made August 15, 1953, and shortly thereafter the full story became known to all the parties.

Sometime after it became known that he had defalcated with the funds in question F. L. Stevens moved from Smith Center. Shortly thereafter, he sold some city lots and applied the proceeds received from the sale, amounting to $761.00, to the credit of Albrecht who, thereupon, credited that amount to the unpaid balance owing on the principal of the mortgage. With this credit and the amount of $1,500.00, previously made, Albrecht received on the principal of the note the total sum of $2,261.00, leaving a balance of $1,239.00 still owing on the principal.

Thereafter, and on May 26, 1956, Pletcher instituted the instant action by filing a petition in the district court of Smith County against Albrecht wherein he asked for cancellation of the mortgage. In this pleading Pletcher alleged that he had paid the respective sums of $2,648.75 and $1,042.50 to F. L. Stevens, as agent of L. M. Stevens, his wife. Later he filed an amended petition and again alleged the payment of the above sums to have been made in that manner. Subsequently Albrecht filed his verified answer and cross-petition, denying the allegations of the amended petition and seeking foreclosure of the mortgage. Thereupon Pletcher filed an answer to defendant's cross-petition and, for the first time, alleged that he had paid the respective sums, just mentioned, in full satisfaction of the note and mortgage to F. L. Stevens, who was acting as the agent of Albrecht. Thereafter Albrecht filed a reply wherein he denied all allegations of Pletcher's answer to the cross-petition and in the verification thereof asserted that the allegations, averments and denials therein contained are true.

With issues joined as indicated the case was tried by the court which, at the close of all evidence adduced by the parties, took the cause under advisement and ultimately rendered its decision in the form of a memorandum opinion, later incorporated in its journal entry of judgment, which reads:

"This is an action to cancel a note and real property mortgage. The plaintiff claims payment. The defendant seeks by cross petition to foreclose the mort-

gage. The nominal mortgagee is L. M. Stevens, the wife of F. L. Stevens. The defendant L. C. Albrecht, is the assignee of L. M. Stevens and owner and holder of the note and mortgage.

"The plaintiff, W. F. Pletcher, acquired the real property from the mortgagor by deed. He agreed to pay the mortgage debt. He paid sums of money at different intervals to F. L. Stevens, sufficient to satisfy the principal and interest. The amount of the note was paid before its due date.

"F. L. Stevens was in the mortgage loan business at Smith Center, Kansas. He arranged and secured the loan for the mortgagor, and L. C. Albrecht, the assignee. He had no capital invested in the loan. His only financial interest was a fee charged to the mortgagor for arranging the loan. F. L. Stevens made L. M. Stevens, his wife, the payee and mortgagee, as a matter of convenience. The mortgage was duly recorded. Albrecht did not record the assignment.

"F. L. Stevens failed to remit part of the mortgage money payments on the principal to Albrecht. Albrecht obtained possession of the note and mortgage immediately upon the assignment. He retained possession thereof.

"The plaintiff urges that Albrecht constituted F. L. Stevens, by his conduct, his agent, with authority to collect interest and principal. The evidence fails to establish such an agency.

"The question as to which of two innocent parties, Albrecht and Pletcher, shall suffer by reason of the default of F. L. Stevens, turns on the application of Sec. 67-321, G. S. 1949.

"The defendant Albrecht contends that this statute is inapplicable for the reason that L. M. Stevens is the mortgagee; that payments were made to F. L. Stevens, not to the mortgagee.

"The plaintiff urges that F. L. Stevens was agent for L. M. Stevens. There is no basis for such agency. L. M. Stevens had no interest in the note and mortgage. There is no subject matter for the existence of such an agency.

"The plaintiff is, nevertheless, entitled to the protection of 67-321, G. S. 1949. Neither F. L. or L. M. Stevens had an interest in the note and mortgage. The arrangement was one of convenience only. Had Pletcher insisted on delivery of the payments to L. M. Stevens, and securing her receipts, the results no doubt would have been the same. F. L. Stevens was active in the business. L. M. Stevens took no part therein.

"Although Pletcher may not have known the status of the relationship between F. L. and L. M. Stevens, relative to the note and mortgage, he may avail himself of it.

"Finally, the defendant urges that had Pletcher demanded the note and mortgage on final payment, he would have learned the facts of the arrangement. This is true. He might have avoided the loss by reason of the default of F. L. Stevens. Although part of the default occurred prior to the final payment of the principal and interest.

"Albrecht urges the principle that, where the maker pays a note before it is due to the payee, without securing possession thereof, and the note comes into the possession of an innocent purchaser, for value, before it is due, then he must stand the loss as between two innocent persons. This is sound doctrine. It appears to be the law. But in this case the note is secured by a

real property mortgage. The legislature has seen fit to put the loss on the person who fails to record his assignment of the mortgage.

"Counsel for plaintiff will prepare a journal entry of judgment for the signature of the Judge of this Court, in accordance with the views expressed in this Memorandum Opinion."

After rendition of the foregoing opinion the court rendered judgment for the plaintiff in accord with its views, as therein expressed, and denied Albrecht any relief on his cross-petition. Thereupon Albrecht filed a motion for judgment on the findings, as contained in the memorandum opinion, and a motion for a new trial. When both motions were overruled he perfected the instant appeal.

Upon careful analysis of the facts and findings it should be stated at the outset that, despite many contentions advanced by appellee and contentions made by appellant in response thereto, there is no place in this appeal for issues raised by the pleadings and involved in the court below regarding questions relating to appellee's claims, denied by appellant, (1) that Albrecht constituted F. L. Stevens, his agent, with authority to collect interest and principal and (2) that F. L. Stevens was agent for L. M. Stevens for the purpose of accepting such payments. The record discloses that both questions were decided contrary to appellee's position, on the basis of competent evidence, in findings (See paragraphs five and eight of the heretofore quoted memorandum opinion) to which neither party objected. Therefore such findings fall squarely within the established rule of this court that findings of fact are conclusive on appellate review when supported by evidence, notwithstanding there is contrary evidence (*Freeman v. Keltner,* 175 Kan. 37, 259 P. 2d 228; *In re Estate of Osborn,* 179 Kan. 365, 295 P. 2d 615; *Kinmonth v. Holm,* 180 Kan. 389, 392, 304 P. 2d 494; *Kindsvater v. Hineman,* 181 Kan. 990, 992, 317 P. 2d 852; *Matzen v. Hugoton Production Co.,* 182 Kan. 456, 465, 321 P. 2d 576). It follows that numerous decisions cited by both parties, which might be regarded as controlling precedents if the trial court had made findings contrary to those above indicated respecting the status of F. L. Stevens as agent under the existing facts and circumstances, are not decisive of the rights of the parties and for that reason need not be mentioned or discussed.

In view of what has been previously related it can now be said that in this appeal the rights of the parties must stand or fall (see Sixth, Ninth and Twelfth paragraphs of findings) on the application of G. S. 1949, 67-321. This statute, which we pause to note

was enacted for the benefit and protection of mortgagors (*Anthony v. Brennan,* 74 Kan. 707, 709, 87 Pac. 1136; *Middlekauff v. Bell,* 111 Kan. 206, 211, 212, 207 Pac. 184; *Allen v. Waddle,* 111 Kan. 690, 691, 692, 208 Pac. 551) and, except for New Mexico (New Mexico Statutes, 1953 [Vol. 9], 61-7-2), is peculiar to this state, reads:

"In cases where assignments of real estate mortgages are made after the passage of this act, if such assignments are not recorded, the mortgagor, his heirs, personal representatives, or assigns, may pay all matured interest or the principal debt itself prior to the recording of such assignment to the mortgagee, or if an assignment of such mortgage has been made that duly appears of record, then such payment may be made to the last assignee whose assignment is recorded in accordance with the provisions of this act, and such payment shall be effectual to extinguish all claims against such mortgagor, his heirs, personal representatives, and assigns, for or on account of such interest or such principal indebtedness; and no transfer of any note, bond or other evidence, of indebtedness, by endorsement or otherwise, where such indebtedness is secured by mortgage on real estate within this state, shall prevent or operate to defeat the defense of payment of such interest or principal by the mortgagor, his heirs, personal representatives, or assigns, where such payment has been made to the mortgagee or to the assignee whose assignment appears last of record under the provisions of this act: *Provided, however,* That in all such cases the assignee who may hold such unrecorded assignment shall have a right of action against his assignor to recover the amount of any such payment of interest or principal made to such assignor as upon an account for money had and received for the use of such assignee."

Before proceeding further it should be pointed out that neither party cites a case, and our independent research has failed to disclose any, where the foregoing statute has been held to either give or deny relief and protection to a mortgagor as against the holder of an unrecorded assignment of the mortgage under the confronting facts and circumstances. However, we do have decisions which, although different from the standpoint of their factual background, throw some light upon the force and effect to be given the terms of the statute in the case at bar.

In this · connection appellant concedes, as our decisions hold (*Allen v. Waddle,* supra; *White v. Kemberling,* 114 Kan. 112, 216 Pac. 1087; *Jacobs v. Hester,* 119 Kan. 661, 665, 240 Pac. 952), that under 67-321, *supra,* if appellee (Pletcher) had made his payments direct to L. M. Stevens he would have been entitled to the protection of the statute and to cancellation of the mortgage. Indeed it has been held that under such statute payment by the mortgagor of the mortgage debt to the last assignee of record is effectual to

extinguish all claims against the mortgagor by reason of such mortgage (*Doty v. Campbell,* 127 Kan. 744, 275 Pac. 148).

Moreover, since they cite and rely on *Allen v. Waddle,* supra, and quote in their briefs from the same paragraph of its opinion, both appellant and appellee must be considered as having impliedly, if not expressly, conceded the rule, which we underline for purpose of emphasis, in that case, where it is said:

"The situation is such that one or the other of two innocent persons must suffer through the misfeasance of the loan company. *If it were not for the specified statute* [now G. S. 1949, 67-321] *the loss would fall upon the defendant for neglecting the precaution otherwise required of him to see that his payments reached the then owner of the note.* That statute, however, places the loss upon the plaintiff because of her neglect to record the assignment." (p. 693.) (Emphasis supplied.)

In leaving the *Allen* case, and in order to avoid any misunderstanding of the force and effect of the rule quoted from its opinion, it should be stated such rule was based on the undisputed facts of that case which, as disclosed by the record, were that the mortgagor had made the payments therein involved to the persons named in the mortgage as mortgagees, who retained such payments, notwithstanding that prior to the receipt thereof they had assigned the mortgage to a third person who had failed to record his assignment.

Thus, in the face of all that has been set forth in the opinion up to this point, it appears the real and all-decisive question involved on appellate review is whether the trial court erred in finding, notwithstanding its findings that F. L. Stevens was not the agent of either L. M. Stevens or Albrecht for purposes of receiving payments of interest and principal on the involved mortgage indebtedness, that "Plaintiff (Pletcher) is nevertheless entitled to the protection of Section 67-321, G. S. 1949," in making such payments of interest and principal to F. L. Stevens, and in rendering judgment against Albrecht accordingly.

In approaching the question now under consideration we are not disposed to restate the facts set forth at length in our own factual statement and in the trial court's findings. However, it may be said, we have again carefully reviewed the record and reached the conclusion that all pure factual statements therein set forth are true. Having done so it suffices to say the court is convinced and therefore holds that, under the existing facts and circumstances, with full knowledge and acquiescence on the part of

Albrecht, prior to and at the time of the execution of the involved mortgage, (1) L. M. Stevens was named as mortgagee in such mortgage as a matter of convenience to F. L. Stevens, her husband, in the operation of his loan business; (2) for all purposes connected with the execution of that instrument F. L. Stevens and L. M. Stevens were one and the same person; and (3) for all purposes connected with payments by Pletcher to the mortgagee of all matured interest or the principal debt itself, prior to the recording of an assignment to such mortgage, F. L. Stevens was the "alter ego" of L. M. Stevens. In view of the foregoing conclusions it necessarily follows that the payments made by Pletcher to F. L. Stevens were in truth and in fact payments to the mortgagee. Therefore, since Albrecht's assignment of the mortgage had not been recorded, such payments were sufficient to bring Pletcher within the protection of the statute (67-321) and require that the trial court's judgment be upheld, even though that tribunal in reaching its decision may have put its finger on additional reasons which were erroneous.

In conclusion it should perhaps be stated that, although the case is in no sense to be regarded as a controlling precedent, what has just been stated and held finds support in *Anthony v. Brennan,* 74 Kan. 707, 87 Pac. 1136, where, with reference to the force and effect to be given the Act of which what is now G. S. 1949, 67-321, was then a part, it is said:

". . . That act does not undertake to limit the methods by which real estate mortgages may be transferred, and it does not provide that the failure to make a record of an assignment of a mortgage shall invalidate the security or the transfer. It was intended as a protection to mortgagors, and the only penalty prescribed for not recording the transfer is that all payments made by the mortgagor to the mortgagee *or to any one who appeared to be the owner* shall be credited to the mortgagor, although the assignee never received such payments. . . ." (p. 709.) (Emphasis supplied.)

The judgment is affirmed.

PARKER, C. J., dissents.